**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Zandonatti, | No. CV-17-00301-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Bank of America, | |
| Defendant. | |

Pending before the Court are the parties' Motions for Summary Judgment (Docs. 56 and 59). The pending motions are fully briefed and suitable for determination without oral argument. LRCiv 7.2(f).

*1. Legal Standard*

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "[W]here evidence is genuinely disputed on a particular issue – such as by conflicting testimony – that 'issue is inappropriate for resolution on summary judgment.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citing *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016)). "There is no such issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. In essence, the inquiry is whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

### 2. Factual and Procedural Background

On July 17, 2007, Plaintiff Anthony Zandonatti obtained a loan from Countrywide Bank[1] in the amount of $417,000.00 for the purchase of a home (the "Property"). Under the terms of the loan agreement, Plaintiff agreed to make monthly payments on the loan until August 1, 2047, when the remaining balance of the loan would become immediately due. Plaintiff made regular monthly payments on the loan until January 2009, when he was sent a Notice of Intent to Accelerate (the "January 2009 Notice") stating that he was in default but had a right to cure that default. Plaintiff cured his default and continued submitting payments until May 2009. On July 17, 2009, Defendant Bank of America again sent Plaintiff a Notice of Intent to Accelerate (the "July 2009 Notice") stating that he was in default, but that he had a right to cure his default.

Like the January 2009 Notice, the July 2009 Notice further provided:

> If the default is not cured on or before August 16, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan if permitted by law.

(Doc. 57-1, pg. 38).

Despite the July 2009 Notice's warning that foreclosure proceedings would be initiated and that the full amount of the mortgage payments would become due and payable on or before August 16, 2009 if the default was not cured, it is undisputed that Defendant did not demand Plaintiff pay the full amount of the mortgage payments or initiate foreclosure proceedings. Plaintiff made no further payments on the loan and, instead, filed for Chapter 7 bankruptcy on December 3, 2009. On June 23, 2011, Defendant sent Plaintiff another Notice of Intent to Accelerate (the "June 2011 Notice"). Like the July 2009 Notice,

---

[1] Countrywide was purchased by Defendant Bank of America in 2008.

the June 2011 Notice stated that if Plaintiff did not cure his default on or before July 23, 2011 "the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full and foreclosure proceedings will be initiated at that time." (Doc. 57-1, pg. 41).

Although the June 2011 Notice stated that the full amount of the mortgage payments would become due and payable on or before July 23, 2011 if the default was not cured, Defendant did not demand Plaintiff pay the full amount of the mortgage payments. Defendant did, however, follow the June 2011 Notice by recording a Notice of Trustee Sale on August 25, 2011. In November 2011, Plaintiff initiated a lawsuit and recorded a Notice of Lis Pendens to halt the foreclosure process. Plaintiff later voluntarily dismissed this lawsuit due to his incarceration. What followed were multiple instances of Plaintiff's attempts to stall the foreclosure process and the initiation of another lawsuit in February 2013. After that lawsuit and a subsequent appeal were dismissed, Defendant filed a Notice of Trustee Sale on March 15, 2017. To stop that sale, Plaintiff filed the pending lawsuit and sought a Temporary Restraining Order ("TRO") in Pima County Superior Court. That TRO was granted on June 19, 2017. On June 30, 2017, Defendant removed the lawsuit to this Court and this Court granted Plaintiff's preliminary injunction staying Defendant's Trustee Sale upon adjudication of the pending lawsuit.

### 3.  Discussion

Plaintiff argues that the July 2009 Notice accelerated the debt and that since Defendant "failed to take sufficient enforcement action within six years of the acceleration," Defendant is time-barred from initiating a foreclosure action on the Property. (Doc. 59, pg. 1). If, as Plaintiff alleges, Defendant accelerated the debt in July 2009, the statute of limitations would operate to prohibit Defendant from initiating foreclosure proceedings due to the lapse of the six-year statute of limitations. *See Andra R Miller Designs LLC v. US Bank NA*, 244 Ariz. 265, 270 (Ariz. Ct. App. 2018), review denied (July 3, 2018) ("When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power").

Defendant alleges that the July 2009 Notice was not an acceleration of the debt and that even if it was, that acceleration was later revoked by the June 2011 Notice. Alternatively, Defendant further alleges that equitable estoppel prevents Plaintiff from asserting that the statute of limitations has run. Defendant argues that Plaintiff's actions in delaying and preventing Defendant from initiating a foreclosure sale should cause any applicable statute of limitations to be tolled. Ultimately, the pivotal issue between the parties is whether the July 2009 Notice constituted an acceleration of the debt.

In support of his argument, Plaintiff writes:

> A lender gives notice of acceleration of an installment debt when it gives notice of such action that 'an affirmative act to make clear to the debtor that it has accelerated the obligation.' Baseline Fin. Serv. v. Madison, 229 Ariz. 543, 544-45 ¶ 8, 278 P.3d 321, 322-23. (emphasis added.). BofA's July 13, 2009 letter in unequivocal in stating that unless Zandonatti paid the amounts identified and 'the default is not cured on or before August 16, 2009 the mortgage payments **will be accelerated**...'. SOF ¶ 4. (Emphasis original to document.) After receiving the letter, Zandonatti reasonably believed that the 2009 letter was sufficient to allow the acceleration. SOF ¶ 6.

(Doc. 59, pg. 3).

Although Plaintiff properly asserts the standard for acceleration articulated in *Baseline*, he appears to have chosen to selectively interpret it. In *Baseline*, the Arizona Court of Appeals stated: "[u]nder the majority view, notwithstanding a creditor's contractual ability to accelerate a debt without notice, it must undertake some **affirmative act** to make clear to the debtor it has accelerated the obligation." *Baseline Fin. Servs. v. Madison*, 278 P.3d 321, 322 (Ariz. Ct. App. 2012) (emphasis added). The standard is unambiguous. A creditor must take affirmative action to accelerate a debt obligation. However, Plaintiff's interpretation instead appears to create a subjective standard where a lendee has the discretion to subjectively determine whether a lender's actions constitute an acceleration of the debt. Plaintiff's "reasonabl[e] belie[f] that the 2009 letter was sufficient to allow the acceleration," is not proof that an acceleration occurred. (Doc. 59, pg. 3).

"To validly exercise an option to accelerate, the majority of jurisdictions require

the payee (1) to present the note for payment and demand payment and (2) to affirmatively exercise the option." *Frei v. Hamilton*, 123 Ariz. 544, 546 (Ariz. Ct. App. 1979). A lender can exercise the option to accelerate in a variety of ways. *See e.g., Andra R Miller Designs LLC*, 244 Ariz. at 270 ("Demand of a full payment before all installments fall due constitutes a sufficiently affirmative act of acceleration"); *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508 (Ariz. Ct. App. 1983) (Lenders can "exercise[] the option to accelerate by taking possession" of property); *Frei*, 123 Ariz. at 547 ("As for the act affirmatively exercising the option, instituting suit for the whole debt is sufficient"); *Andra R Miller Designs LLC*, 244 Ariz. at 270 ("The recordation of [a Notice of Trustee Sale] was an affirmative act of the debt's acceleration"). The law is clear: for Defendant to have exercised its option to accelerate the debt, Defendant must have taken some affirmative action that was meant to obtain the entire value of the Property either by possession, sale, suit, or demand. Defendant took no such action and the July 2009 Notice was not an affirmative act of acceleration.

The July 2009 Notice is unambiguous. It states that "[i]f the default is not cured on or before August 16, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full and foreclosure proceedings will be initiated at that time." (Doc. 57-1, pg. 38). What the July 2009 Notice did not do is demand full payment of the loan. It merely cautioned Plaintiff that the debt would be accelerated in the future. Although the July 2009 Notice unambiguously states the debt will be accelerated if payments are not made, the mere inclusion of a future warning that an event will occur is not tantamount to that event actually occurring. "Generally, acceleration clauses are viewed as protective devices for the security of the lender. This clause, not being self-executing, is merely exercisable at the lender's option." *Browne v. Nowlin*, 117 Ariz. 73, 75 (Ariz. 1977).

The Court's conclusion is consistent with recent decisions in this District addressing this very issue. *See Hummel v. Rushmore Loan Mgmt. LLC*, No. CV-17-08034-PCT-DGC, 2018 WL 3744858, at *4 (D. Ariz. Aug. 7, 2018) ("Defendants' 2009 notice of default and

intent to accelerate does not 'make clear' that the debt had in fact been accelerated. The letter indicates that it is not a notice of acceleration, but rather a notice of intent to accelerate in the future.") (internal citation omitted); *Gard v. Ocwen Loan Servicing LLC*, No. CV-17-04539-PHX-DWL, 2019 WL 3718972, at \*6 (D. Ariz. Aug. 7, 2019) (Argument that a "[n]otice's title ('Notice of Intent to Accelerate') and warning that acceleration 'may' follow a failure to pay the delinquent amount were clear enough . . . lack[ed] merit. Neither statement reasonably communicated that acceleration had occurred—to the contrary, these statements merely noted the possibility that the right to accelerate could be exercised in the future . . . Thus, the notice did not merely stop short of acceleration. It affirmatively put off the decision, invited Plaintiffs to discuss resolution without acceleration, and told them to be on the lookout for specific actions by which acceleration might later occur").

Therefore, while Defendant could have exercised its option to accelerate by demanding full payment of the loan from Plaintiff, it did not do so in its July 2009 Notice. What Defendant did do in the July 2009 Notice is threaten to exercise its option to accelerate in the *future*. Since a threat to demand full payment in the future is not a sufficiently affirmative act of acceleration, Plaintiff's argument that Defendant accelerated the debt via the July 2009 Notice fails. Since the July 2009 Notice was not an affirmative act of acceleration, the Court declines to address whether the June 2011 Notice constituted a revocation or whether equitable estoppel prevents Plaintiff from asserting that the statute of limitations has run.

Accordingly, IT IS ORDERED:

1. Defendant's Request for Judicial Notice (Doc. 58) is **granted**.

2. Defendant's Motion for Summary Judgment (Doc. 56) is **granted**.

3. Plaintiff's Motion for Summary Judgment (Doc. 59) is **denied**.

4. The Preliminary Injunction staying Defendant's Trustee Sale (Doc. 22) is now lifted.

5. Because the Court concludes as a matter of law Defendant did not accelerate the debt in July 2009, and that issue is dispositive of Plaintiff's claims, judgment

shall enter in favor of Defendant Bank of America and against Plaintiff Anthony Zandonatti on all claims.

6. The Clerk of Court is directed to close its file on this matter.

Dated this 3rd day of September, 2019.

Honorable Cindy K. Jorgenson
United States District Judge